# IN THE SUPREME COURT OF IOWA

No. 14–0691

Filed January 22, 2016

Amended April 5, 2016

**DARLA LEGG** and **JASON T. LEGG,** on Behalf of Themselves and All Persons Similarly Situated,

Appellees,

vs.

**WEST BANK,**

Appellant.

_____

Appeal from the Iowa District Court for Polk County, Bradley McCall, Judge.

Defendant moves for interlocutory appeal from a district court ruling certifying class action status. **DECISION OF DISTRICT COURT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Wade R. Hauser III, Jason M. Craig, Lindsay A. Vaught, and Michael J. Streit of Ahlers & Cooney, P.C., Des Moines, for appellant.

Ann E. Brown-Graff, Brad J. Brady, and Matthew L. Preston of Brady Preston Brown PC, Cedar Rapids, for appellees.

**ZAGER, Justice**.

In this interlocutory appeal, we are asked to determine whether the district court properly certified a class action based on the plaintiffs' usury and sequencing claims involving one-time nonsufficient fund (NSF) fees charged by the bank. This case is a companion case to another opinion we file today, *Legg v. West Bank*, 873 N.W.2d 763, 765 (Iowa 2016). Because we concluded in that case that the district court erred in denying the bank's motions for summary judgment except as to the good-faith claim involving the sequencing of overdrafts, we likewise find that the district court erred in certifying the class action on all claims except for the good-faith claim based on sequencing.

## I. Background Facts and Proceedings.

Because the background facts and proceedings are the same in both cases, we incorporate them here by reference.

## II. Standard of Review.

"Our review of the district court's ruling granting or denying certification of a class action is limited because the district court enjoys broad discretion in the certification of class action lawsuits." *Vos v. Farm Bureau Life Ins. Co.*, 667 N.W.2d 36, 44 (Iowa 2003). We reverse a district court's ruling granting certification only if we find the decision was based upon an abuse of discretion. *Kragnes v. City of Des Moines*, 810 N.W.2d 492, 498 (Iowa 2012). An abuse of discretion is found only when the district court's grounds for certifying a class action are clearly unreasonable. *Anderson Contracting, Inc. v. DSM Copolymers, Inc.*, 776 N.W.2d 846, 848 (Iowa 2009). "Our class-action rules are remedial in nature and should be liberally construed to favor the maintenance of

class actions." *Id.* (quoting *Comes v. Microsoft Corp.*, 696 N.W.2d 318, 320 (Iowa 2005)).

### III. Class Action Status.

West Bank challenged the district court's certification of class action status on both the usury and sequencing subclasses. It raised challenges to class action status under both the Iowa Consumer Credit Code (ICCC) and the Iowa Rules of Civil Procedure. One of the challenges West Bank made to the usury subclass arose under Iowa Code section 537.5201 (2009), part of the ICCC. Because we found in the companion case that the usury claims could not proceed under the ICCC, we likewise choose not to address the arguments against class action status that arise under the ICCC in this opinion.

Iowa Rules of Civil Procedure 1.261 and 1.262 govern the commencement of a class action and the certification of a class. Rule 1.261 provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all in a class action if both of the following occur:
>
> **1.261(1)** The class is so numerous or so constituted that joinder of all members, whether or not otherwise required or permitted, is impracticable.
>
> **1.261(2)** There is a question of law or fact common to the class.

Iowa R. Civ. P. 1.261.

Our rules require the class to be "either so numerous or constituted in such a way that joinder is impracticable and there is a question of law or fact common to the class." *Anderson Contracting*, 776 N.W.2d at 848. We have "adopted the general rule . . . that if the class is

large, numbers alone are dispositive to show impracticability." *City of Dubuque v. Iowa Trust*, 519 N.W.2d 786, 792 (Iowa 1994). A class with forty or more members is within the range where impracticability is presumed. *Id.* As noted by the district court in its ruling, West Bank has conceded numerosity is satisfied.

The second prong under rule 1.261 requires a "question of law or fact common to the class," sometimes referred to as "predominance." Iowa R. Civ. P. 1.261. Predominance or commonality asks whether the class members have common issues that predominate over individual issues. *Anderson Contracting*, 776 N.W.2d at 852. The test for predominance or commonality

> is a pragmatic one, which is in keeping with the basic objectives of the [class action rule]. When common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than an individual basis. . . . [C]ourts have held that a [class action] can be brought . . . even though there is not a complete identity of facts relating to all class members, as long as a "common nucleus of operative facts" is present. . . .
>
> The common questions need not be dispositive of the entire action. In other words, "predominate" should not be automatically equated with "determinative" or "significant." Therefore, when one or more of the central issues in the action are common to the class and can be said to predominate, the [class] action will be considered proper . . . . Typically, this situation arises in antitrust or securities fraud cases. . . . [I]n these actions the courts generally hold that if defendant's activities present a "common course of conduct" so that the issue of statutory liability is common to the class, the fact that damages . . . may vary for each party does not require that the class action be terminated.

*Luttenegger v. Conseco Fin. Servicing Corp.*, 671 N.W.2d 425, 437 (Iowa 2003) (emphasis omitted) (quoting 7AA Charles Alan Wright, Arthur R.

Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1778, at 121–25 (2d ed. 1986) (footnotes omitted)).

The Leggs argue the sequencing subclass has overarching issues of law that are identical. The sequencing subclass has questions of law regarding high-to-low sequencing and whether the sequencing resulted in unjust enrichment or violated an implied or express duty of good faith. The Leggs further assert that West Bank's finance charges and sequencing protocol were identical for all customers during the same time period. Because we conclude that the district court erred in denying the bank's motion for summary judgment on the unjust enrichment claims, we only address the good-faith claims based on sequencing. We conclude that the district court did not abuse its discretion in finding commonality was met for the good-faith sequencing subclass.

West Bank argued that individual issues would predominate because the plaintiffs would have to prove the date of the overdraft, the amount of the overdraft, the amount of the NSF fee, and the date on which the NSF fee was paid for each class member. Therefore, West Bank claims ascertaining the damage claims of each individual class member would be onerous and make management of the claims as a class action impossible. This court has previously held that the mere fact that there may be damage issues unique to different class members does not preclude class certification where there are common issues of liability. *See, e.g.*, *Vignaroli v. Blue Cross of Iowa*, 360 N.W.2d 741, 745 (Iowa 1985). We conclude common issues predominate in the case at bar because the members of the sequencing subclass share common issues of liability with regard to high-to-low sequencing. We find no abuse of

discretion by the district court in finding that the commonality requirement was met.

Once the requirements of rule 1.261 are met, rule 1.262 covers the certification of class actions:

> The court may certify an action as a class action if it finds all of the following:
>
> a. The requirements of rule 1.261 have been satisfied.
>
> b. A class action should be permitted for the fair and efficient adjudication of the controversy.
>
> c. The representative parties fairly and adequately will protect the interests of the class.

Iowa R. Civ. P. 1.262(2). As discussed above, the requirements of rule 1.261 have been met. We now turn to a discussion of the other two sections.

"Rule 1.263(1) sets forth a number of factors that the district court is to consider and weigh in determining whether the prerequisite of rule 1.262(2)(*b*) . . . has been met." *Luttenegger*, 671 N.W.2d at 437. The relevant factors are:

> a. Whether a joint or common interest exists among members of the class.
>
> b. Whether the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for a party opposing the class.
>
> c. Whether adjudications with respect to individual members of the class as a practical matter would be dispositive of the interests of other members not parties to the adjudication or substantially impair or impede their ability to protect their interests.

*d.* Whether a party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the class as a whole.

*e.* Whether common questions of law or fact predominate over any questions affecting only individual members.

*f.* Whether other means of adjudicating the claims and defenses are impracticable or inefficient.

*g.* Whether a class action offers the most appropriate means of adjudicating the claims and defenses.

*h.* Whether members who are not representative parties have a substantial interest in individually controlling the prosecution or defense of separate actions.

*i.* Whether the class action involves a claim that is or has been the subject of a class action, a government action, or other proceeding.

*j.* Whether it is desirable to bring the class action in another forum.

*k.* Whether management of the class action poses unusual difficulties.

*l.* Whether any conflict of laws issues involved pose unusual difficulties.

*m.* Whether the claims of individual class members are insufficient in the amounts or interests involved, in view of the complexities of the issues and the expenses of the litigation, to afford significant relief to the members of the class.

Iowa R. Civ. P. 1.263(1)(*a*)–(*m*).

Courts are allowed to "give appropriate weight" to the factors. *Id.* r. 1.263(1). No specific weight is to be given to any one factor; rather, the trial court has broad discretion in weighing the above-listed factors. *Vignaroli,* 360 N.W.2d at 744. The district court concluded that a class

action would permit a "fair and efficient adjudication of the controversy." In *Kragnes*, this court noted:

> The litigation of this case has resulted in two Supreme Court opinions, a forty-nine page district court decision after a fourteen-day bench trial involving the testimony of twenty-eight witnesses, including eight experts—three for the City and five for Kragnes. The record fills five bankers' boxes. However, Kragnes's claim standing alone would likely fall within the jurisdictional limit of the small claims court. We think this case demonstrates the very necessity and importance of class action litigation both for the plaintiffs and for the City. The likelihood of a plaintiff bringing such a complex suit requiring substantial resources to litigate in small claims is highly unlikely. And if she, and scores of thousands of others like her, did bring their claims individually, it could easily overwhelm the legal department of the City and the resources of the Polk County district court, and would likely result in inconsistent adjudications.

*Kragnes*, 810 N.W.2d at 503. Similarly, the district court found in regard to West Bank that "West Bank's claim that individual customers have adequate remedies to pursue their claims without the benefit of class representation is undermined by the zealous nature with which West Bank has defended this action, including three summary judgment motions and an interlocutory appeal to the Iowa Supreme Court."

This supports subsection (m) of the pertinent rule. *See* Iowa R. Civ. P. 1.263(1)(*m*) ("Whether the claims of individual class members are insufficient in the amounts or interests involved, in view of the complexities of the issues and the expenses of the litigation, to afford significant relief to the members of the class."). It also supports subsection (b) of the same rule. *Id.* r. 1.263(1)(*b*) ("Whether the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class."). The district court also

addressed at length subsection (e), concluding that common questions of law predominate over any individual claims. *Id.* r. 1.263(1)(*e*) ("Whether common questions of law or fact predominate over any questions affecting only individual members."). The district court did not abuse its discretion in finding that certification on the good-faith sequencing claim was "permitted for the fair and efficient adjudication of the controversy." *Id.* r. 1.262(2)(*b*).

The last question is whether the class representatives "fairly and adequately will protect the interests of the class." *Id.* r. 1.262(2)(*c*). Rule 1.263(2) lists factors for courts to consider in determining whether the class representatives will fairly and adequately protect the interests of the class:

> *a.* The attorney for the representative parties will adequately represent the interests of the class.
>
> *b.* The representative parties do not have a conflict of interest in the maintenance of the class action.
>
> *c.* The representative parties have or can acquire adequate financial resources, considering rule 1.276, to ensure that the interests of the class will not be harmed.

*Id.* r. 1.263(2). The district court determined that all of these factors were met.

West Bank argues that the Leggs are not adequate representatives and that they have a conflict of interest because they are no longer customers of West Bank. The district court found that the Leggs were suitable representatives for the class action because they have "a personal interest in the litigation and have alleged that they were injuriously affected by the actions of West Bank." The court found that

their injuries were sufficiently tied to the claims being asserted by the class.

When a court denies a class certification based on a representative being inadequate, "there are usually special circumstances or a combination of factors involved." *Stone v. Pirelli Armstrong Tire Corp.*, 497 N.W.2d 843, 847 (Iowa 1993). Though not an exhaustive list, special circumstances this court has found in the past include when other members of the class lack confidence in the representative and when the representatives lack credibility. *Id.* The district court did not find, nor did West Bank advance, any special circumstances that would make the Leggs inadequate as representatives. The district court did not abuse its discretion in finding that this prong was met.

The district court also found that the attorneys for the Leggs would adequately represent the class. The district court found that the record before it

> reflects that the attorneys for the Plaintiffs are skilled, competent, and well qualified to represent the interests of the class. At oral argument they expressed an ongoing willingness to advance the costs necessary to pursue the claims of the class.

There is nothing in the record to suggest this is not true. The district court did not abuse its discretion in determining that the attorneys for the Leggs could adequately represent the class on the good-faith sequencing claim.

**IV. Conclusion.**

We conclude that the district court did not abuse its discretion in granting the Motion for Certification of Class Action filed in this matter. However, based on our opinion in *Legg v. West Bank*, 873 N.W.2d 763

(Iowa 2016), the class action certification will only apply to the good-faith sequencing claim. Therefore, the class shall be as follows:

> Sequencing Class: All West Bank customers who were charged additional NSF fees between July 1, 2006, and September 30, 2010, as a result of West Bank changing the sequencing order for Bank Card Transactions from low-to-high sequencing to high-to-low sequencing on July 1, 2006.

**DECISION OF DISTRICT COURT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**