# IN THE SUPREME COURT OF IOWA

No. 15–1350

Filed May 19, 2017

**DANIEL KLINE, FRANK SORIES,** and **AMARIS McCANN,**

Appellees,

vs.

**SOUTHGATE PROPERTY MANAGEMENT, LLC,**

Appellant.

Appeal from the Iowa District Court for Johnson County, Patrick R. Grady, Judge.

A landlord appeals a district court's ruling on summary judgment that certain lease provisions are prohibited under the Iowa Uniform Residential Landlord and Tenant Act and that certified a class of tenants. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

James W. Affeldt and Nicholas J. Kilburg of Elderkin & Pirnie, P.L.C., Cedar Rapids, until withdrawal, and then Stephen J. Holtman and Lisa A. Stephenson of Simmons Perrine Moyer Bergman, PLC, Cedar Rapids, for appellant.

Christopher Warnock of The Iowa Tenants' Project, Iowa City, and Christine Boyer of The Iowa Tenants' Project, Iowa City, for appellees.

Thomas H. Walton and Matthew R. Eslick of Nyemaster Goode, P.C., Des Moines, for amici curiae Landlords of Iowa, Inc. and Greater Iowa Apartment Association.

**HECHT, Justice.**

Three tenants brought this action against their landlord after their leases expired. The tenants, alleging they represent a class of similarly situated residential tenants, claim the landlord is liable for damages under the Iowa Uniform Residential Landlord and Tenant Act (the Act) because the landlord's leases included several provisions known by the landlord to be prohibited provisions. The district court granted summary judgment in favor of the tenants, declaring that the challenged lease provisions violate the Act and certifying a class of tenants. On interlocutory appeal, the landlord contends (1) the lease provisions are not prohibited under the Act; (2) the tenants have no claim for damages because even if the lease provisions are prohibited, the landlord did not enforce them; and (3) the district court erred in certifying the class of tenants. Upon review, we conclude some, but not all, of the challenged lease provisions are prohibited under the Act, and we find no abuse of discretion in the district court's certification of a class of plaintiff tenants.

## I. Background Facts and Proceedings.

Daniel Kline, Frank Sories, and Amaris McCann are former residential tenants of properties owned or managed by SouthGate Property Management, LLC. Kline and Sories entered into a rental agreement with SouthGate on July 27, 2012, for a lease term that ended on July 28, 2013. McCann entered into a residential agreement with SouthGate on August 1, 2012, for a lease term that ended on July 28, 2014.

SouthGate's leases included provisions imposing fees, charges, and liquidated damages against the tenants in the event of various occurrences. Paragraph 3 prescribed a charge of $25 if a tenant's check was returned for insufficient funds. Paragraph 4 established a charge of

$50 per month for each new tenant added after the term of the lease began. Paragraph 9 assessed a handling fee of $50 for each utility bill received or paid by SouthGate as a consequence of a tenant's failure to take responsibility for the obligation and established a $50 utility reconnection charge in the event the tenant's delinquency precipitated a termination of utility service. Paragraph 12 set a charge for maintenance calls caused by a tenant's negligence at the "current rate per hour plus trip charge" as determined by SouthGate. A liquidated damage assessment of $500 was prescribed in paragraph 15 for keeping an unauthorized pet on the premises. An administrative fee of $300 was imposed in paragraph 19 if a tenant assigned or sublet the premises. Paragraph 22 of the lease established a daily rate of $300 per day for tenants holding over and also required the tenants to pay "any damages" resulting from the holdover. An acceleration clause in paragraph 27 provided the tenant would immediately owe rent for the entire term of the lease in the event of an early termination.

Additional fees were prescribed by SouthGate's Building and Property Rules.[1] Rule 10 charged tenants for "lockout service calls" at the rate of $45 per call during business hours and $85 per call at other times. Rule 11 established a fee of $15 for replacement keys and rule 12 imposed a charge of $25 for each violation of the lease or the building and property rules.

---

[1]Paragraphs 33 and 37 of SouthGate's leases incorporated several attachments including "Building and Property Rules" consisting of twelve paragraphs on a single page. Iowa Code section 562A.18 authorizes landlords to adopt written rules concerning use and occupancy of the premises. Iowa Code § 562A.18 (2015).

The leases also limited a tenant's remedies in the event SouthGate was unable to deliver possession on the first day of the lease term. Paragraph 11 provided as follows:

> Subject to other remedies at law, if Landlord, after making a good faith effort, is unable to give Tenant possession at the beginning of the term, the rent shall be abated on a pro rata basis until possession can be given. The rebated rent shall be accepted by Tenant as full settlement of all damages occasioned by the delay, and if possession cannot be delivered within ten (10) days of the beginning of the term, this Rental Agreement may be terminated by either party given five (5) days written notice.

The subject of carpet cleaning was also addressed in SouthGate's leases. Property rule 9 provided as follows:

> All carpets are professionally cleaned at the end of each tenancy. The departing tenant had professionally cleaned carpet at move-in and the tenant will be charged for professionally cleaned carpet at termination. Any extra painting or carpet cleaning needed to be done will be deducted from Tenant's Rental Deposit.

Paragraph 30 of the lease established a checklist detailing the condition of the dwelling at the commencement of the lease. This provision provided,

> Within three (3) days of the commencement of occupancy, Tenant shall complete and return to Landlord the Apartment Inspection Checklist, Smoke Alarm and Fire Extinguisher checklists (if applicable). If tenant does not within three (3) days complete and return those checklists, Tenant shall be presumed as acknowledging that there are no defects or damages in the Dwelling Unit. Landlord agrees to review the checklists and notify Tenant of any objections within seven (7) days of receipt of completed checklists. If Landlord does not notify Tenant of Landlord's objections within seven (7) days of receipt of completed checklists, Tenant's evaluation shall be deemed accepted by Landlord. These checklists and objections (if any) shall be retained by Landlord.

The tenants filed this action against SouthGate seeking a declaration that each of the lease provisions mentioned above violated

the Act. The tenants' petition requested actual and punitive damages, injunctive relief, and attorney fees. SouthGate's answer denied the leases' provisions violate the Act and raised the statute of limitations as an affirmative defense.

**A. Motion for Partial Summary and Declaratory Judgment.** The tenants filed a motion for partial summary and declaratory judgment. The motion sought a declaration that the above-mentioned lease provisions imposing charges, fines, penalties, liquidated damages, or other fees are prohibited because SouthGate can recover only actual damages from tenants under the Act. The tenants urged the court for the same reason to enter summary judgment declaring that the lease provision imposing an automatic carpet-cleaning charge violates the Act. The tenants further urged the court to enter judgment declaring paragraphs 11 and 30 of the lease violate section 562A.11(1) of the Act because they purport to waive tenants' rights or remedies pertaining to possession and to a clean, sanitary, and habitable dwelling. In addition, the tenants' motion sought a determination that they did not have to prove the landlord actually attempted to enforce these provisions against them.

In its resistance to the tenants' motion for partial summary judgment, SouthGate contended the contested provisions are not prohibited under the Act. In the alternative, SouthGate asserted that even if the challenged provisions are prohibited under the Act, the tenants suffered no damages because the provisions were not enforced against them. The landlord further asserted it did not willfully use any prohibited lease provision in violation of section 562A.11(2) because it had no knowledge of the claimed prohibition prior to the execution of the leases at issue in this case. Based on these assertions, SouthGate's

resistance to the motion asserted that the tenants' petition presented no justiciable controversy supporting a declaratory judgment.

SouthGate also filed a motion for summary judgment. It urged dismissal of the petition because all of the challenged lease provisions are compatible with the Act and the tenants therefore suffered no compensable injury as a matter of law.

**B. Motion for Class Certification.** The tenants also filed a motion requesting they be certified as representatives of a class consisting of all tenants who signed a substantially similar version of SouthGate's standard lease. They requested the court adjudicate for the entire class (1) whether the challenged provisions of SouthGate's standard lease are prohibited by the Act, and (2) whether SouthGate willfully used the lease knowing it contained prohibited provisions. SouthGate resisted the certification of the proposed class of tenants, contending the named plaintiffs are not proper representatives of the class because the challenged lease provisions were not enforced against them and individual questions of fact dominate over common questions across the proposed class.

**C. District Court's Summary Judgment Ruling.** The district court granted the tenants' motion for partial summary judgment. The court declared that the three categories of lease provisions challenged by the tenants are prohibited under the Act. The court further concluded the lease provisions imposing the fees and charges detailed above were prohibited under the Act because they were set "without any consideration of what [SouthGate's] actual damages and fees would be in each situation." The court also decided SouthGate's carpet-cleaning provision was prohibited under the Act because it automatically imposed a fee on tenants without regard to whether the carpet was clean at the

end of the lease term and authorized SouthGate to withhold the expense from the tenants' security deposit without proof that such cleaning was necessary to restore the dwelling unit to its condition at the commencement of the tenancy, ordinary wear and tear excepted.

The district court's summary judgment ruling also concluded two other lease provisions challenged by the tenants are prohibited under Iowa Code section 562A.11 (2015). First, the court concluded paragraph 11—the rule limiting the tenants' remedy to a pro rata abatement of rent in the event of a delay of possession at the beginning of the lease term— was a prohibited term under section 562A.11(1)(*d*). Second, the court determined paragraph 30—the rule waiving the tenants' claims of defects in the condition of the dwelling not identified on an apartment-condition checklist and delivered to SouthGate within three days of move-in— constituted a waiver of the tenants' rights prohibited under section 562A.11(1)(*a*). The court reasoned that these two lease provisions violated the Act because they purported to limit SouthGate's obligations under section 562A.14 (landlord's obligation to supply possession of dwelling unit) and section 562A.15 (landlord's obligation to maintain fit premises). The court also concluded paragraph 30 of the lease was prohibited under the Act because it was calculated to limit SouthGate's liability under the common law for failing to satisfy its duty to protect tenants from reasonably foreseeable harm.[2] The court certified a class of

---

[2]The district court concluded the question of whether SouthGate *willfully* used lease provisions *known to be* prohibited would have to be tried. *See Caruso v. Apts. Downtown, Inc.*, 880 N.W.2d 465, 474 (Iowa 2016) (interpreting Iowa Code section 562A.11(2) as requiring "actual knowledge" that a lease provision was illegal). Having concluded the tenants' motion for summary judgment should be granted, the district court denied SouthGate's motion for summary judgment.

plaintiffs consisting of all of SouthGate's tenants with the same or substantially similar standard leases and lease rules.

In reaching its summary judgment conclusions, the district court relied on an unpublished decision of our court of appeals in *Staley v. Barkalow*, No. 12–1031, 2013 WL 2368825 (Iowa Ct. App. May 30, 2013). In *Staley*, the plaintiffs were tenants who alleged their landlord used several lease provisions prohibited under Iowa Code section 562A.11(1). *Staley*, 2013 WL 2368825, at \*2. The tenants challenged the lease provisions on the grounds they constituted illegal indemnity and exculpatory clauses, required tenants to pay rent even if the landlord failed to deliver possession of the premises at the commencement of the lease term, and illegally required tenants to pay for maintenance and repair of the premises, carpet cleaning, and property damages caused by third-party vandals. *Id.* at \*2–3. The defendant landlord contended it had no liability to the tenants under chapter 562A for lease provisions that were included in the lease but not enforced. *Id.* at \*4–5. The district court denied the *Staley* tenants' motion for partial summary judgment, concluding the landlord had no liability to the tenants under section 562A.11(2) for including any lease provisions that were not enforced against them, and denied a motion to certify a class of similarly situated plaintiffs. *Id.* at \*5–6. Our court of appeals reversed, concluding a landlord "willfully uses" a lease provision prohibited under the Act by willfully including it in a lease. *Id.* at \*8. The court of appeals also found the district court abused its discretion in refusing to certify the class of tenants. *Id.* at \*12.

We granted SouthGate's application for interlocutory review.

## II. Scope and Standards of Review.

Generally, our standard of review for a declaratory judgment ruling depends on whether the action was tried at law or in equity in the district court. When we review a declaratory ruling entered on summary judgment, however, our scope of review is for correction of errors at law. *Shelby Cty. Cookers, L.L.C. v. Util. Consultants Int'l., Inc.*, 857 N.W.2d 186, 189 (Iowa 2014). Summary judgment rulings based on statutory interpretation are reviewed for correction of errors at law. *Estate of McFarlin v. State*, 881 N.W.2d 51, 56 (Iowa 2016).

We review a district court's rulings on certification of a class for an abuse of discretion. *Kragnes v. City of Des Moines*, 810 N.W.2d 492, 498 (Iowa 2012). The district court "enjoys broad discretion in the certification of class action lawsuits." *Legg v. W. Bank*, 873 N.W.2d 756, 758 (Iowa 2016) (quoting *Vos v. Farm Bureau Life Ins.*, 667 N.W.2d 36, 44 (Iowa 2003)). Iowa's "class-action rules are remedial in nature and should be liberally construed to favor the maintenance of class actions." *Anderson Contracting, Inc. v. DSM Copolymers, Inc.*, 776 N.W.2d 846, 848 (Iowa 2009) (quoting *Comes v. Microsoft Corp.*, 696 N.W.2d 318, 320 (Iowa 2005)). A district court abuses its discretion when its "grounds for certification are clearly unreasonable." *Id.*

## III. Analysis.

We first address SouthGate's contention that the district court erred in interpreting the word "uses" in section 562A.11(2) in a way that permits a tenant to recover damages against a landlord who knowingly included, but did not attempt to enforce, a prohibited provision in a rental agreement. We then turn to SouthGate's alternative contention that even if the district court correctly interpreted section 562A.11(2), we must still reverse the summary judgment ruling because none of the

rental agreement provisions challenged by the tenants in this case are prohibited under section 562A.11(1). Lastly, we address SouthGate's assertion that the district court abused its discretion in certifying a class of tenants in this action.

**A. Standing.** SouthGate casts its challenge to the district court's interpretation of the word "uses" in section 562A.11(2) as a question of standing.[3] Noting that the lease terms of Kline, Sories, and McCann ended before this litigation was commenced, SouthGate posits that the tenants can assert no imminent threat of future injury arising from the enforcement of any lease provision. Because it is undisputed that SouthGate made no attempt to enforce the challenged lease provisions against the named plaintiffs, SouthGate argues the summary judgment record is devoid of evidence of any injurious effect necessary to sustain standing to sue. Accordingly, SouthGate suggests, the tenants' claims in this case are purely hypothetical or academic—not concrete and justiciable.

The tenants take a distinctly different view. They claim their standing to sue SouthGate under section 562A.11(2) does not turn on the landlord's attempt to enforce prohibited provisions of their rental agreements or on proof of actual damages. The tenants contend they have standing to sue SouthGate under the statute as a consequence of SouthGate's alleged inclusion of known prohibited provisions in their rental agreements—even if SouthGate made no attempt to enforce those provisions.

---

[3]The standing argument is alternatively pressed by SouthGate under theories of ripeness and mootness. Because we conclude the theories of ripeness and mootness are unmeritorious for the same reasons as the argument based on standing, we do not address them separately in this opinion.

We have characterized the standing doctrine as a self-imposed rule of judicial restraint. *Hawkeye Bancorporation v. Iowa Coll. Aid Comm'n*, 360 N.W.2d 798, 802 (Iowa 1985). The doctrine limits the work of courts to those cases in which plaintiffs have a "sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of [their] controversy." *Citizens for Responsible Choices v. City of Shenandoah*, 686 N.W.2d 470, 475 (Iowa 2004) (quoting *Birkhofer ex rel. Johannsen v. Birkhofer*, 610 N.W.2d 844, 847 (Iowa 2000)). The sufficiency of the tenants' stake in this case therefore turns on (1) whether they assert a specific personal or legal interest in the litigation and (2) whether that interest has been injuriously affected. *See id.*

Typically, we have applied the doctrine of standing in public rights cases, where we require the citizen to demonstrate "some personal injury." *Godfrey v. State*, 752 N.W.2d 413, 424 (Iowa 2008). This case does not involve litigation against the state or a political subdivision, but rather against a private party based on a statutory cause of action. Our assessment of the nature of the tenants' right to proceed with the litigation therefore must focus on the scope of the cause of action as enacted by the legislature in section 562A.11(2).[4] The parties offer

---

[4]The landlord cites us to the recent United States Supreme Court decision in *Spokeo, Inc. v. Robins*, 578 U.S. ___, 136 S. Ct. 1540 (2016), which it urges us to follow. In *Spokeo*, someone ran a search under the plaintiff's name on the defendant's "people search engine" and received inaccurate information. *Spokeo*, 578 U.S. at __, 136 S. Ct. at 1544. The plaintiff thereafter brought a putative class action against the defendant under the Federal Fair Credit Reporting Act (FCRA). *Id.* The district court dismissed the plaintiff's case for lack of Article III standing, but the Ninth Circuit reversed, finding that a violation of the plaintiff's statutory rights under the FCRA was sufficient in and of itself to confer standing. *Id.* at ___, 136 S. Ct. at 1544–45. The Supreme Court reversed and remanded, reasoning,

> Congress'[s] role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article

distinctly divergent interpretations of the word "uses" in section 562A.11(2). The tenants assert a landlord "uses" a rental agreement including a prohibited provision when the agreement forms the basis of a landlord–tenant relationship. Thus, under the tenants' interpretation, SouthGate used rental agreements containing prohibited provisions within the meaning of section 562A.11(2) even though it took no affirmative steps to enforce them. In sharp contrast, SouthGate contends a landlord "uses" a rental agreement for purposes of the statute only if it attempts to enforce a prohibited provision against a tenant and thereby causes actual damages. Because it did not attempt to enforce any of the challenged provisions against Kline, Sories, or McCann, SouthGate contends the tenants were not injuriously affected and therefore have no standing to sue in this case.

We conclude section 562A.11(2) is ambiguous because reasonable persons could disagree as to the meaning of "uses" in this context. *See IBP, Inc. v. Harker*, 633 N.W.2d 322, 325 (Iowa 2001). In interpreting a statute, our primary objective is to determine the legislature's intent. *Branstad State ex rel. Nat. Res. Comm'n*, 871 N.W.2d 291, 295 (Iowa 2015). We determine the legislature's intent by assessing the language used in the statute, the statute's purpose, and the consequences of possible interpretations. *Des Moines Flying Serv., Inc. v. Aerial Servs.*

---

III standing requires a concrete injury even in the context of a statutory violation.

*Id.* at ___, 136 S. Ct. at 1549.

The Supreme Court instructed the Ninth Circuit to determine on remand "whether the particular procedural violations alleged in this case entail a degree of risk sufficient to meet the concreteness requirement." *Id.* at ___, 136 S. Ct. at 1550. We are not persuaded that the Article III limit on Congress's power to authorize private litigation in the federal courts identified in *Spokeo* applies to the same extent when the general assembly authorizes private litigation in Iowa courts.

*Inc.*, 880 N.W.2d 212, 220 (Iowa 2016). When interpreting a statute, we consider a statute in its entirety, not just isolated words or phrases. *Schadendorf v. Snap–On Tools Corp.*, 757 N.W.2d 330, 337 (Iowa 2008). Because the word "uses" is undefined in the Act, we assign it its common, ordinary meaning in the context in which it is used. *Bank of Am., N.A. v. Schulte*, 843 N.W.2d 876, 880 (Iowa 2014).

The Act—a comprehensive reform of residential landlord–tenant law—was adopted in 1978. 1978 Iowa Acts, ch. 1172 (codified as amended at Iowa Code ch. 562A).[5] In adopting the landmark reform measure, the general assembly prescribed in some detail the obligations owed by landlords and tenants to each other. *See* Iowa Code §§ 562A.12–.15 (landlord obligations); *id.* §§ 562A.17–.20 (tenant obligations). The reform measure also delineated the remedies that are available to landlords and tenants for breaches of their respective obligations. *Id.* §§ 562A.27–.33 (landlord remedies); *id.* §§ 562A.21–.26 (tenant remedies).

The general assembly included in the Act a statement of the purposes and policies underlying the new Code chapter:

> *a.* To simplify, clarify, modernize and revise the law governing the rental of dwelling units and the rights and obligations of landlord and tenant; and
>
> *b.* To encourage landlord and tenant to maintain and improve the quality of housing.
>
> *c.* To ensure that the right to the receipt of rent is inseparable from the duty to maintain the premises.

Iowa Code § 562A.2(2).

---

[5]The history of landlord–tenant law antedating the adoption of the Act was well-chronicled in *De Stefano v. Apts. Downtown, Inc.*, 879 N.W.2d 155 (Iowa 2016) and will not be repeated here.

Professor Lovell published an exhaustive review of the Act shortly after its adoption. *See* Russell E. Lovell, *The Iowa Uniform Residential Landlord and Tenant Act and the Iowa Mobile Home Parks Residential Landlord and Tenant Act*, 31 Drake L. Rev. 253 (1981) [hereinafter Lovell]. He noted that the Act provided needed specifics for implementing the warranty of habitability recognized earlier by this court in *Mease v. Fox*, 200 N.W.2d 791 (Iowa 1972), and provided additional rights and protections for tenants as well. Lovell, 31 Drake L. Rev. at 263. Included among those additional protections for tenants is section 562A.11, a provision expressly prohibiting certain categories of rental agreement provisions and authorizing remedies for its violation. It states,

> 1. A rental agreement shall not provide that the tenant or landlord:
>
> *a.* Agrees to waive or to forego rights or remedies under this chapter provided that this restriction shall not apply to rental agreements covering single family residences on land assessed as agricultural land and located in an unincorporated area;
>
> *b.* Authorizes a person to confess judgment on a claim arising out of the rental agreement;
>
> *c.* Agrees to pay the other party's attorney fees; or
>
> *d.* Agrees to the exculpation or limitation of any liability of the other party arising under law or to indemnify the other party for that liability or the costs connected therewith.
>
> 2. A provision prohibited by subsection 1 included in a rental agreement is unenforceable. If a landlord willfully uses a rental agreement containing provisions known by the landlord to be prohibited, a tenant may recover actual damages sustained by the tenant and not more than three months' periodic rent and reasonable attorney fees.

Iowa Code § 562A.11. This provision is a remedial feature of the reform legislation that was designed, as Professor Lovell has explained, "to ensure that the new protections afforded . . . tenants [were] not lost

through the contracting process." Lovell, 31 Drake L. Rev. at 288. SouthGate advances an interpretation of section 562A.11(2) that would require tenants to prove actual damages arising from attempted enforcement of a prohibited provision. Under this interpretation, the tenants' remedy for mere inclusion of a prohibited provision in a rental agreement is the defense of unenforceability under section 562A.11(1).

Because the general assembly authorized the more consequential remedy of actual damages in the second sentence of section 562A.11(2) against a landlord who "uses" a rental agreement including a prohibited provision, SouthGate contends we should conclude "uses" refers to more culpable conduct than mere inclusion of a prohibited term. In particular, SouthGate posits that the second sentence means a landlord "uses" a rental agreement with a prohibited provision only by attempting to enforce the prohibited provision and causing a tenant's actual damage. We are not convinced.

It seems unlikely to us that the availability of the distinct remedial alternatives authorized in the first and second sentences of section 562A.11(2) turns on whether the landlord has attempted to enforce a prohibited provision. The defense of unenforceability granted in the first sentence of the section seems to presuppose that the general assembly was contemplating a scenario in which a landlord has attempted to enforce a prohibited provision.

We think it more likely that the general assembly prescribed different remedies in the first and second sentences of section 562A.11(2) as a means of addressing the degree of a landlord's subjective culpability. The defense of unenforceability was chosen as the remedy in the first sentence for tenants against landlords who mistakenly or innocently include prohibited provisions in their rental agreements. The

consequence-of-damage remedies authorized in the second sentence is reserved for the more culpable conduct of landlords who willfully and knowingly use prohibited provisions.

We also think it apparent that the general assembly's choice of the word "uses" in the second sentence of section 562A.11(2) was intended to address a broader range of landlord conduct than is reached by the word "included" in the previous sentence. Although "uses" in this context obviously subsumes the conduct of attempting to enforce a prohibited provision, we believe it also encompasses the separate egregious act of inserting such a provision in a rental agreement with knowledge that it is prohibited. In his early exegesis of the Act, Professor Lovell presaged that section 562A.11 would authorize a remedy at law "against a landlord who include[s] a prohibited provision in the lease, whether or not the landlord [sought] to enforce that provision against the tenant." Lovell, 31 Drake L. Rev. at 292–93. Standing alone, the defense of unenforceability will not accomplish excision of prohibited provisions from residential rental agreements. *See id.* at 291–92. "There was further concern that without the prospect of other remedial sanctions, there would be some unscrupulous landlords who would continue to insert prohibited provisions in their leases and exploit those provisions against unsuspecting tenants." *Id.* at 292. For these reasons, we conclude section 562A.11(2) authorizes a claim for damages against a landlord, even in the absence of an attempt to enforce a prohibited provision. This interpretation best comports with the general assembly's directive that we liberally construe chapter 562A.[6]

---

[6]It is noteworthy that Iowa's language is similar to that in the 1972 Uniform Residential Landlord and Tenant Act, which provided, "If a landlord deliberately uses a rental agreement containing provisions known by him to be prohibited, the tenant may

In furtherance of its standing argument, SouthGate also contends proof of actual damages is a prerequisite for the recovery of additional damages of "not more than three months' periodic rent" under section 562A.11(2). SouthGate focuses here on the phrase "a tenant may recover actual damages . . . and not more than three months' periodic rent" within the second sentence of the section and asserts it means a tenant may not recover the latter without the former. We reject this interpretation of the phrase, however, because we have already determined the section authorizes a damage remedy against landlords who knowingly include prohibited provisions in their leases even in the absence of any attempt to enforce them. Consistent with this understanding, we conclude the conjunctive connection in the subject phrase permits a recovery of not more than three months' periodic rent even if no actual damages are pled and proved.

Analogizing the "not more than three months' periodic rent" formulation to a punitive damage award, SouthGate calls our attention to

---

recover in addition to his actual damages an amount up to [3] months' periodic rent and reasonable attorney's fees." Unif. Residential Landlord & Tenant Act § 1.403, 7B U.L.A. 313 (2006). The official comment explains,

> Such provisions, even though unenforceable at law may nevertheless prejudice and injure the rights and interests of the uninformed tenant who may, for example, surrender or waive rights in settlement of an enforceable claim against the landlord for damages arising from the landlord's negligence.

*Id.* § 1.403 cmt., 7B U.L.A. 314.

This language suggests that the drafters of the uniform act understood the term "uses" to have a relatively broad meaning. In fact, when Oregon enacted its version of the uniform act, it modified this sentence seemingly to achieve the meaning sought by the landlord in this case: "If a landlord deliberately uses a rental agreement containing provisions known by the landlord to be prohibited *and attempts to enforce such provisions*, the tenant may recover in addition to the actual damages of the tenant an amount up to three months' periodic rent." Or. Rev. Stat. Ann. § 90-245(2) (West, Westlaw current through emergency legis. through ch. 13 of 2017 Reg. Sess.) (emphasis added).

the principle that punitive damages are generally not recoverable in the absence of actual damages. *See Syester v. Banta,* 257 Iowa 613, 627, 133 N.W.2d 666, 675 (Iowa 1965). Although that principle is well-established, we conclude it does not constrain the general assembly's choice to provide a remedy other than actual damages as an alternative for tenants who have suffered no actual damage arising from an attempted enforcement of a prohibited provision, but nonetheless seek a remedy for their landlord's egregious inclusion of the provision.

SouthGate contends our decision in *D.R. Mobile Home Rentals v. Frost,* 545 N.W.2d 302 (Iowa 1996) (per curiam), should lead us to conclude the tenants claims must fail because they cannot prove actual damages. In that case, a tenant abandoned a rented dwelling. *Id.* at 303. The landlord sued for damages under Iowa Code section 562A.32 after the rental agreement was terminated, seeking a judgment for unpaid rent for the period between the abandonment and termination and for the cost of removing debris left on the premises by the tenant. *Id.* at 303–04, 306. The district court entered judgment for the landlord and the tenant appealed. *Id.* at 304. On appeal, we reversed the judgment for rent because the landlord failed to prove it made any effort to rent the dwelling as required under Iowa Code section 562A.29(3) after the tenant abandoned it. *Id.* at 305. We also reversed the judgment for the cost of removing the debris because the landlord "did not present evidence that Frost's debris was removed." *Id.* at 306.

SouthGate's contention that *Frost* supports its position that proof of actual damages is a prerequisite for tenants seeking a damage remedy under section 562A.11(2) is off the mark. Although we reversed the judgment for damages in *Frost* for lack of proof of actual damages, we did so because the landlord brought that action under section 562A.32. *Id.*

at 306; *see also* Iowa Code § 562A.32 ("If the rental agreement is terminated, the landlord may have a claim for possession and for rent and a separate claim for actual damages for breach of the rental agreement and reasonable attorney fees . . . ."). That section makes no provision for a remedial alternative to actual damages in posttermination actions brought by landlords like the one available to tenants under section 562A.11(2). Accordingly, *Frost* is distinguishable and not helpful to our analysis.

For all of these reasons, we reject SouthGate's contention that the tenants lack standing to press their statutory claims for damages under section 562A.11(2). Thus, we now turn to SouthGate's argument that the district court erred in concluding that provisions in the rental agreement assessing the challenged charges and fees are prohibited provisions.

**B. Fees, Charges, and Liquidated Damages Provisions.** The district court concluded all of the challenged fees, charges, and liquidated damage provisions in the leases are prohibited under the Act "because they were set without any consideration of what the landlord's actual damages and fees would be in each situation." The court reached this conclusion because it believed our decision in *Frost* required it. SouthGate asserts reversal is required on this issue because the fees, charges, and liquidated damages provisions challenged by the tenants in this case are not prohibited under either chapter 562A or law supplementing the chapter. *See id.* § 562A.3.

Although chapter 562A imposes some specific restraints on the content of residential rental agreements, the statute does not completely displace freedom of contract. This is made evident in section 562A.9(1), which provides,

> The landlord and tenant may include in a rental agreement, terms and conditions not prohibited by this chapter or other rule of law including rent, term of the agreement, and other provisions governing the rights and obligations of the parties.

Iowa Code § 562A.9(1).

As we have already noted, some specific categories of provisions are expressly prohibited under the Act. For example, provisions waiving rights and remedies established in chapter 562A are banned, as are those confessing judgment, those exculpating, limiting, or indemnifying another party's liability, and those agreeing to pay another party's attorney fees. *See* Iowa Code § 562A.11(1). Unconscionable provisions are also prohibited. *Id.* § 562A.7. Beyond these express prohibitions, however, landlords and tenants are free to form residential rental contracts consistent with chapter 562A and the principles of law and equity supplementing it. *Id.* § 562A.3.

Upon review, we conclude the district court erred in declaring that the fees, charges, and liquidated damages provisions in paragraphs 3 (charge for checks returned for insufficient funds), 4 (charge for new tenants added to the lease after term begins), 9 (fee for utility bill received or paid by landlord because tenant failed to arrange transfer of account), 12 (charge for maintenance calls caused by tenant's negligence), 15 (liquidated damages for unauthorized pet), 19 (fee for assigning or subletting), 22 (per diem fee for holding over), and 27 (rent acceleration clause for early termination) of the rental agreement and rules 10 (charge for lockout service calls), 11 (fee for replacement keys), and 12 (charge for lease violations) are categorically prohibited as a matter of law. We find no basis for determining these provisions are categorically prohibited under 562A.11(1). Accordingly, they are

appropriately classified as "other provisions governing the rights and obligations of the parties" under section 562A.9(1). *Id.* § 562A.9(1).

The tenants nonetheless urge affirmance of the district court's declaration because the challenged fees, charges, and liquidated damage amounts are not "actual damages" recoverable by landlords. In support of this argument, the tenants cite our decision in Frost. Frost, 545 N.W.2d 302. But as our discussion of Frost in our analysis of the standing issue reveals, the landlord's posttermination action in that case was not brought to enforce fees, charges, or liquidated damage provisions. The landlord in Frost instead brought a posttermination action under section 562A.32 for unpaid rent and damages for the cost of removing debris left by the tenant who had abandoned the dwelling before the end of the lease term. *Id.* at 303–04. We reversed the judgment against the tenant because the landlord failed to prove it met its statutory obligation to attempt to rent the dwelling during the interim between the tenant's abandonment of the property and the end of the lease term, and because the record lacked substantial evidence of the expense, if any, incurred by the landlord in removing the tenant's debris. *Id.* at 305. Thus, we reject the tenants' contention that our decision in Frost established a rule that fees, charges, or liquidated damage provisions in rental agreements are categorically prohibited.

We conclude the summary judgment declaring the fees, charges, and liquidated damages are categorically prohibited provisions must be reversed. We emphasize, however, that the district court did not decide whether any of the fees, charges, and liquidated damage provisions challenged in this case by the tenants are unconscionable under section 562A.7 or unenforceable penalties under any other principle of law or

equity supplementing the Act. *See id.* §§ 562A.7, .9(1). Accordingly, those issues remain for resolution in proceedings on remand.

**C. Delayed Possession Provision.** Paragraph 11 of the rental agreements provides,

> Subject to other remedies at law, if Landlord, after making a good faith effort, is unable to give Tenant possession at the beginning of the term, the rent shall be rebated on a pro rata basis until possession can be given. The rebated rent shall be accepted by Tenant as full settlement of all damages occasioned by the delay, and, if possession cannot be delivered within ten (10) days of the beginning of the term, this Rental Agreement may be terminated by either party giving five (5) days written notice.

The district court found this provision is prohibited under section 562A.11(1)(*d*) because it constitutes an exculpation or limitation of the landlord's liability arising under law.

SouthGate contends the district court erred in concluding this is a prohibited provision. Noting the provision commences with "subject to other remedies at law," SouthGate posits the tenants' right to refuse the rent abatement as a make-whole remedy and instead file an action for damages is not foreclosed. Although the provision does track section 562A.11(1)(*d*) in abating the obligation to pay rent during the delay and permitting the tenants to terminate the rental agreement upon five days' written notice, we find it falls completely off the statutory rails in limiting SouthGate's damage exposure to the abatement remedy "as full settlement of all damages." The provision cannot be saved in our view by the ambiguous introductory phrase "[s]ubject to other remedies at law" as it otherwise clearly purports to attempt to limit SouthGate's liability and the tenants' remedy for damages sustained as a consequence of the delay under section 562A.22. *See id.* § 562A.22(1)(*b*) (allowing tenants to elect to sue for possession and recover damages); *id.* § 562A.22(2)

(authorizing recovery of actual damages and reasonable attorney fees if landlord's failure to deliver possession is willful and not in good faith).

We conclude the district court correctly declared paragraph 11 is a prohibited provision under section 562A.11.

**D. Carpet-Cleaning Provision.** The district court concluded the carpet-cleaning provision found in rule 9 of SouthGate's rental agreement is prohibited because it provides for automatic cleaning whether the carpet needs cleaning or not and because the rule permits the landlord to avoid its obligations under section 562A.12(3). *See id.* § 562A.12(3) (requiring landlord within thirty days to return the rental deposit or furnish to the tenant a written statement showing the specific reason for withholding any portion of the rental deposit and detailing the reasons for which withholding is permitted). SouthGate contends the district court erred on this issue because the record demonstrates that the provision is not automatically invoked against tenants. The summary judgment record reveals, for example, that no amount was withheld from the security deposits of Kline, Sories, or McCann for carpet cleaning. SouthGate further contends that even if the carpet-cleaning provision were invoked against a tenant, no violation of section 562A.12(3)(*a*)(2) would occur because the cleaning of carpets is a measure calculated to restore the dwelling unit to its condition at the commencement of the tenancy. *See id.* § 562A.12(3)(*a*)(2) (authorizing withholding from the rental deposit such amounts as are reasonably necessary "[t]o restore dwelling unit to its condition at the commencement of the tenancy, ordinary wear and tear excepted").

We recently addressed the enforceability of a carpet-cleaning provision in a residential rental agreement. *See De Stefano v. Apts. Downtown, Inc.,* 879 N.W.2d 155 (Iowa 2016). In *De Stefano,* we

acknowledged that Iowa Code section 562A.12 "clearly authorizes the deduction of carpet-cleaning costs from rental deposits if necessary to restore the dwelling unit to the condition at the commencement of the tenancy, beyond the ordinary wear and tear." *Id.* at 186. We clarified, however, that a landlord cannot "impose an automatic carpet-cleaning fee and deduct such charges from a rental deposit." *Id.*

We conclude the district court erred in declaring SouthGate's rule 9 is a prohibited provision under section 562A.12(3). The rule is not reasonably understood as a provision for effecting an automatic withholding of the cost of carpet cleaning from security deposits. It is instead a provision establishing a benchmark for the condition of the carpet—a clean carpet—at the commencement of each tenancy from which subsequent assessments of ordinary wear and tear can be measured. We believe it is significant that the first two sentences of rule 9 do not purport to authorize the automatic withholding of the cost of such regular cleaning from the tenant's security deposit. *See id.* (leaving room for the possibility that "a landlord may be able to impose a nonrefundable charge on tenants for automatic carpet cleaning" not affecting the rental deposit). Indeed, as we have already indicated, the summary judgment record reveals no withholding for regular carpet cleaning was claimed by SouthGate from the security deposits of Kline, Sories, or McCann.

We acknowledge that the third sentence of rule 9 authorizes a deduction from the rental deposit for any "extra painting or carpet cleaning needed to be done." This sentence does not render the rule categorically infirm in our view because the word "extra" distinguishes the cleaning referenced here from the regular carpet cleaning described in the preceding two sentences. Any attempted withholding of the cost of

such "extra" cleaning from the rental deposit would be subject to the requirement that SouthGate prove the cleaning was reasonably necessary "[t]o restore the dwelling unit to its condition at the commencement of the tenancy, ordinary wear and tear excepted." Iowa Code § 562A.12(3)(*a*)(2).

We conclude rule 9 is not categorically prohibited under the Act. Accordingly, we reverse on this issue.

**E.  The Apartment-Inspection Checklist.** The district court declared paragraph 30 of the lease is a prohibited provision because it constitutes a limitation or exculpation of SouthGate's liability to exercise ordinary care for the safety of its tenants and its statutory obligation to provide and maintain a fit dwelling under section 562A.15(1). SouthGate contends the district court erred in interpreting the apartment-checklist provision in paragraph 30 as an agreement to waive or forego rights or remedies or an agreement to exculpate or limit the landlord's liability for defects in the premises. The provision accomplishes none of those prohibited ends, SouthGate asserts, and it instead serves a protective function for tenants. In documenting defects of the dwelling at the outset of the tenancy, tenants diminish the risk that they will be blamed for any preexisting damages. Furthermore, SouthGate contends, the checklist provision advances the salutary interests of both parties to the lease in documenting the condition of the premises and facilitating the prompt repair of any defects from the outset of the tenancy.

The tenants contend the district court got it right because the consequence of a failure to timely complete and return the form is onerous: A presumption arises under paragraph 30 that the tenant acknowledges there are no defects or damage in the Dwelling Unit at the outset of the tenancy. The tenants characterize the checklist provision

as a thinly veiled device calculated by SouthGate to avoid liability for defects in the dwelling in violation of section 562A.11(1)(*a*) and (*d*) in the event tenants overlook a defect and fail to list it or fail to return the form to SouthGate within three days after occupancy of the dwelling begins.

We find SouthGate's arguments more persuasive on this point. We view paragraph 30 as a procedural device to promote documentation of the condition of the dwelling at the outset of the landlord–tenant relationship. The checklist is a means of focusing the attention of both parties on any defects when occupancy begins so that any documented defects may be known and repaired if necessary by SouthGate. We find persuasive SouthGate's assertion that the checklist device serves in part to shield tenants from responsibility for preexisting conditions or defects in the dwelling. Although the contents of the checklist—or the absence of a checklist if the tenant fails to prepare and return it—might well have evidentiary significance in the event SouthGate claims the tenant caused damage to the dwelling, we conclude the evidence falls short of an agreement to waive or forego rights or remedies prohibited under section 562A.11(1)(*a*) or an agreement to exculpate or limit SouthGate's liability under the law. Accordingly, we conclude the district court erred in declaring paragraph 30 of the rental agreement is a prohibited provision.

**F.  Certification of the Class.**  SouthGate argues the district court made both procedural and substantive errors in certifying the class of tenants. In ruling on the tenants' motion to certify the class, the district court cited the decision of the court of appeals in *Staley*. In that case, discussed above in this opinion, the appellate court directed the district court to certify a class of tenants challenging provisions of a residential rental agreement. *Staley*, 2013 WL 2368825, at *10. SouthGate contends the district court in this case relied solely on the

certification decision in *Staley* and assumed—without performing an independent analysis and making findings of fact as to the substantive criteria for class certification—that certification is appropriate in this case.

The tenants have the burden of establishing that the proposed class meets the prerequisites for certification. *Vos*, 667 N.W.2d at 45. An order certifying a class "shall state the reasons for the court's ruling and its findings on the facts listed in rule 1.263(1)." Iowa R. Civ. P. 1.264(2). In summary fashion, the district court found this case presents "nearly identical class certification facts" to those in *Staley* and ordered certification here. SouthGate contends the court's summary disposition of the certification issue without the predicate factual determinations mandated by our procedural rules constitutes an abuse of discretion.

SouthGate also criticizes the district court's description of the class "consisting of all of the Defendants' tenants with the same or substantially similar standard leases and lease rules." SouthGate contends this description is flawed because it lacks a time limitation and leaves too much ambiguity arising from the phrase "substantially similar." These uncertainties are so profound, in SouthGate's view, as to constitute an abuse of discretion.

We conclude the class certification is procedurally flawed in the absence of the required findings and must be reversed. Our ruling should not be understood, however, as a determination that the grounds for certification of a class cannot be established in this case. On remand, the court should make the findings required under rule 1.263(1). At that time, if the court's findings support the certification of a class, the court will also have an opportunity to address any issues

raised by SouthGate with respect to uncertainty in the description of the class.

## IV. Conclusion.

We affirm the district court's declaration that paragraph 11 of SouthGate's rental agreement constitutes a prohibited provision. We reverse the district court's declaration that the other lease and rule provisions are categorically prohibited. We also reverse the class certification ruling and remand for further proceedings.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**